IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF NEW MEXICO

WILSON CHEE,

    Plaintiff,

vs.                                                                                                          1:16-cv-00364-LF

NANCY A. BERRYHILL,[1] Acting
Commissioner of the Social Security
Administration,

    Defendant.

## **MEMORANDUM OPINION AND ORDER**

THIS MATTER comes before the Court on plaintiff Wilson Chee's Motion to Reverse and Remand for a Rehearing with Supporting Memorandum, filed November 18, 2016, and fully briefed on March 6, 2017. Docs. 18, 22, 23, 26. The parties have consented to my entering a final judgment in this case. Doc. 33. Having meticulously reviewed the entire record and being fully advised in the premises, the Court finds that the administrative law judge's ("ALJ") decision is supported by substantial evidence, and that she applied the correct legal standards. I therefore DENY Mr. Chee's motion and dismiss this case.

### I.    **Standard of Review**

The standard of review in a Social Security appeal is whether the Commissioner's final decision[2] is supported by substantial evidence and whether the correct legal standards were applied. *Maes v. Astrue,* 522 F.3d 1093, 1096 (10th Cir. 2008). If substantial evidence supports

---

[1] Nancy A. Berryhill, the new Acting Commissioner of Social Security, is automatically substituted for her predecessor, Acting Commissioner Carolyn W. Colvin, as the defendant in this suit. FED. R. CIV. P. 25(d).

[2] The Court's review is limited to the Commissioner's final decision, 42 U.S.C. § 405(g), which generally is the ALJ's decision, 20 C.F.R. §§ 404.981, 416.1481, as it is in this case.

the Commissioner's findings and the correct legal standards were applied, the Commissioner's decision stands, and the plaintiff is not entitled to relief. *Langley v. Barnhart,* 373 F.3d 1116, 1118 (10th Cir. 2004). "The failure to apply the correct legal standard or to provide this court with a sufficient basis to determine that appropriate legal principles have been followed is grounds for reversal." *Jensen v. Barnhart,* 436 F.3d 1163, 1165 (10th Cir. 2005) (internal quotation marks and brackets omitted). The Court must meticulously review the entire record, but may neither reweigh the evidence nor substitute its judgment for that of the Commissioner. *Flaherty v. Astrue,* 515 F.3d 1067, 1070 (10th Cir. 2007).

"Substantial evidence is such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." *Langley,* 373 F.3d at 1118. A decision "is not based on substantial evidence if it is overwhelmed by other evidence in the record or if there is a mere scintilla of evidence supporting it." *Id.* While the Court may not reweigh the evidence or try the issues de novo, its examination of the record as a whole must include "anything that may undercut or detract from the ALJ's findings in order to determine if the substantiality test has been met." *Grogan v. Barnhart,* 399 F.3d 1257, 1262 (10th Cir. 2005). "'The possibility of drawing two inconsistent conclusions from the evidence does not prevent [the] findings from being supported by substantial evidence.'" *Lax v. Astrue*, 489 F.3d 1080, 1084 (10th Cir. 2007) (quoting *Zoltanski v. F.A.A.*, 372 F.3d 1195, 1200 (10th Cir. 2004)).

**II.     Applicable Law and Sequential Evaluation Process**

To qualify for disability benefits, a claimant must establish that he or she is unable "to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected to result in death or which has lasted or can be expected to last for a continuous period of not less than 12 months." 42 U.S.C. § 423(d)(1)(A);

20 C.F.R. §§ 404.1505(a), 416.905(a).

When considering a disability application, the Commissioner is required to use a five-step sequential evaluation process. 20 C.F.R. §§ 404.1520, 416.920; *Bowen v. Yuckert*, 482 U.S. 137, 140 (1987). At the first four steps of the evaluation process, the claimant must show: (1) the claimant is not engaged in "substantial gainful activity;" (2) the claimant has a "severe medically determinable . . . impairment . . . or a combination of impairments" that has lasted or is expected to last for at least one year; *and* (3) the impairment(s) either meet or equal one of the Listings[3] of presumptively disabling impairments; *or* (4) the claimant is unable to perform his or her "past relevant work." 20 C.F.R. §§ 404.1520(a)(4)(i–iv), 416.920(a)(4)(i–iv); *Grogan*, 399 F.3d at 1261. If the claimant cannot show that his or her impairment meets or equals a Listing but proves that he or she is unable to perform his or her "past relevant work," the burden then shifts to the Commissioner, at step five, to show that the claimant is able to perform other work in the national economy, considering the claimant's residual functional capacity ("RFC"), age, education, and work experience. *Id.*

### III. Background and Procedural History

Mr. Chee is a 34-year-old man who attended school through the 11th grade and later obtained his GED. AR[4] 110, 144, 411, 423. Mr. Chee suffered a traumatic head injury as a child. AR 283, 306, 332, 659, 663, 695, 698. He testified that he is unable to live alone, and during the pendency of this case he has resided with two different girlfriends and his sister. AR 36, 110, 415, 420, 424. Mr. Chee previously has worked at various jobs for short periods of time, including work as an account member at a casino, a cashier, a roustabout, a stocker, a

---

[3] 20 C.F.R. pt. 404, subpt. P, app. 1.

[4] Documents 12-1 through 12-24 comprise the sealed administrative record ("AR"). When citing to the record, the Court cites to the AR's internal pagination rather than the CM/ECF document number and page.

3

janitor, and a utility clerk.  AR 32–34, 145, 150, 413, 432.

On February 12, 2010, Mr. Chee applied for Supplemental Security Income (SSI) and for Disability Insurance Benefits (DIB), alleging disability since February 9, 2010.  AR 110–16.  Mr. Chee alleged he was disabled due to a head injury, "left side problems," depression, problems with memory, and anger issues.  AR 143.  Mr. Chee's application was denied initially and upon reconsideration, and Mr. Chee requested a hearing before an ALJ.  AR 48–53, 54–63, 65–73, 76–77.  ALJ Myriam Fernandez Rice held a hearing on March 13, 2012.  AR 26–47.  The ALJ issued her unfavorable decision a month later.  AR 9–25.  The Appeals Council denied Mr. Chee's request for review on July 26, 2013, and Mr. Chee appealed the ALJ's decision to the United States District Court for the District of New Mexico.  AR 1–6, 439–42.  Upon the agreement of the parties, the District Court remanded the case to the Commissioner for further proceedings.  AR 443–44.  The Appeals Council remanded the case to the ALJ.  AR 445–49.

On November 12, 2015, ALJ Fernandez Rice conducted a second hearing.  AR 408–38.  The ALJ issued her second unfavorable decision on January 5, 2016.  AR 386–407.  At step one, the ALJ found that Mr. Chee had "not engaged in substantial gainful activity since February 9, 2010, the alleged onset date."  AR 392.  At step two, the ALJ found that Mr. Chee had the severe impairments of depression, personality disorder secondary to traumatic brain injury, seizures, obesity, and a traumatic brain injury in 1996.  *Id*.  The ALJ also found that that Mr. Chee had nonsevere impairments, including left leg weakness and diabetes mellitus.  *Id*.  At step three, the ALJ found that none of Mr. Chee's impairments—alone or in combination—met or medically equaled a Listing.  AR 393. Because none of the impairments met a Listing, the ALJ moved to step four.

At step four, the ALJ assessed Mr. Chee's RFC, and found that:

> [C]laimaint has the residual functional capacity to perform work at all exertional levels except he cannot climb ladders, ropes or scaffolds. The claimant must also avoid even moderate use of moving machinery, and exposure to unprotected heights. He can maintain, understand, and remember simple work instructions with only occasional changes in work setting. He should have only occasional contact with the public and co-workers.

AR 394–95. The ALJ noted that Mr. Chee had no past relevant work[5] and, therefore, proceeded to step five. AR 399. Based on the testimony of a vocational expert, at step five the ALJ determined that there were jobs that exist in significant numbers in the national economy that Mr. Chee could perform, including hand packager, hand polisher, and hand cleaner/polisher. AR 399–400. Accordingly, the ALJ found that Mr. Chee is not disabled. AR 400.

Mr. Chee did not file exceptions to the ALJ's decision, and the Appeals Council did not assume jurisdiction, making the ALJ's decision the final decision of the Commissioner. Doc. 18 at 4; Doc. 22 at 2; *see also* 20 C.F.R. §§ 404.984(a), 416.1484(a) ("when a case is remanded by a Federal court for further consideration, the decision of the administrative law judge will become the final decision of the Commissioner after remand on your case unless the Appeals Council assumes jurisdiction of the case"). Mr. Chee timely filed his appeal to this Court on April 29, 2016. Doc. 1; *see also* 20 C.F.R. §§ 404.984(c), (d), 416.1484(c), (d) (ALJ's decision becomes final if Appeals Council does not assume jurisdiction within 60 days); 42 U.S.C. § 405(g) (claimant may obtain judicial review of any final decision of the Commissioner by commencing civil action within 60 days after the mailing of notice of the final decision).

---

[5] Past relevant work is work that was "done within the past 15 years, that was substantial gainful activity, and that lasted long enough for you to learn to do it." 20 C.F.R. § 404.1560(b)(1); *Barker v. Astrue*, 459 F. App'x 732, 740–41 (10th Cir. 2012) (unpublished). Presumably Mr. Chee's prior jobs either did not last long enough, or did not constitute substantial gainful activity, and therefore did not qualify as "past relevant work." *See* AR 399.

## IV. Mr. Chee's Claims

Mr. Chee raises three arguments on appeal. He contends that the ALJ erred by: 1) improperly rejecting the medical opinion of his treating physician, David Schultz, M.D.; 2) improperly rejecting the findings of examining psychologist John Koewler, Ph.D.; and 3) failing to incorporate portions of the medical opinion of State agency consultant Ralph Robinowitz, Ph.D., into Mr. Chee's RFC without explanation, contrary to Social Security Rulings ("SSR") 96-6p and 96-8p. I find that the ALJ properly weighed each opinion, and that her explanations were supported by substantial evidence.

## V. Discussion

### A. Law regarding Medical Source Evaluations

The ALJ must evaluate all of the medical opinions in the record whether they are from a treating physician, examining physician, or from a consulting physician who performs a medical records review. *See Hamlin v. Barnhart*, 365 F.3d 1208, 1215 (10th Cir. 2004); 20 C.F.R. §§ 404.1527(c), 416.927(c) ("Regardless of its source, we will evaluate every medical opinion we receive"); SSR 96-5p, 1996 WL 374183, at *1 ("[O]pinions from any medical source about issues reserved to the Commissioner must never be ignored.").

When evaluating a treating physician's opinion, an ALJ must follow a specific, two-step sequential process. *Mays v. Colvin*, 739 F.3d 569, 574 (10th Cir. 2014).

> An ALJ must first consider whether the opinion is well-supported by medically acceptable clinical and laboratory diagnostic techniques. . . . If the ALJ finds that the opinion is well-supported, he [or she] must then confirm that the opinion is consistent with other substantial evidence in the record.

*Id*. (quoting *Robinson v. Barnhart*, 366 F.3d 1078, 1082 (10th Cir. 2004)). "[I]f the opinion is deficient in either of these respects, then it is not entitled to controlling weight." *Id.* When an ALJ determines that a treating physician's opinion is not entitled to controlling weight, "it is still

6

entitled to deference" and must be weighed considering the relevant factors in 20 C.F.R. §§ 404.1527, 415.927. Those factors are:

> (1) the length of the treatment relationship and the frequency of examination; (2) the nature and extent of the treatment relationship, including the treatment provided and the kind of examination or testing performed; (3) the degree to which the physician's opinion is supported by relevant evidence; (4) consistency between the opinion and the record as a whole; (5) whether or not the physician is a specialist in the area upon which an opinion is rendered; and (6) other factors brought to the ALJ's attention which tend to support or contradict the opinion.

*Watkins v. Barnhart*, 350 F.3d 1297, 1300–01 (10th Cir. 2003). An ALJ is not required to discuss every factor, but "an ALJ must give good reasons for the weight assigned to a treating physician's opinion that are sufficiently specific to make clear to any subsequent reviewers the weight the adjudicator gave to the treating sources' medical opinion and the reasons for the weight." *Id*. at 1301. Similarly, an ALJ must give specific, legitimate reasons for completely rejecting a medical source opinion. *Id.*

"The opinion of an examining physician is generally entitled to less weight than that of a treating physician, and the opinion of an agency physician who has never seen the claimant is entitled to the least weight of all." *Robinson*, 366 F.3d at 1084. But the ALJ still is required to consider all of the medical opinions, explain the weight given to the opinions, and provide specific, legitimate reasons if he or she rejects an opinion. *Doyal v. Barnhart*, 331 F.3d 758, 764 (10th Cir. 2003); SSR 96-6p, 1996 WL 374180, at *1.

### B. The ALJ Properly Analyzed Dr. Schultz's Opinion.

Mr. Chee argues that the ALJ improperly rejected the medical opinion of his treating physician, Dr. Schultz. As an initial matter, there is a dispute about whether Dr. Schultz was Mr. Chee's treating physician. *Compare* Doc. 18 at 1 (describing Dr. Schultz as Mr. Chee's "Treating Physician"; *with* Doc. 22 at 7 ("it is not clear that Dr. Schultz's opinions were those of

7

a treating physician"). A "treating source" is "your own physician, psychologist, or other acceptable medical source who provides you, or has provided you, with medical treatment or evaluation and who has, or has had, an ongoing treatment relationship with you." 20 C.F.R. §§ 404.1502, 416.902. "This requires a relationship of both duration and frequency." *Doyal*, 331 F.3d at 762.

> The treating physician doctrine is based on the assumption that a medical professional who has dealt with a claimant and his maladies over a long period of time will have a deeper insight into the medical condition of the claimant than will a person who has examined a claimant but once, or who has only seen the claimant's medical records.

*Id.* (quoting *Barker v. Shalala*, 40 F.3d 789, 794 (6th Cir.1994)). "A physician's opinion is therefore not entitled to controlling weight on the basis of a fleeting relationship, or merely because the claimant designates the physician as [his or] her treating source." *Id*. at 763.

Mr. Chee argues that Dr. Schultz is his treating physician because Dr. Schultz worked at Northern Navajo Medical Center ("NNMC") where Mr. Chee previously had been treated by Dr. Chance.[6] Doc. 18 at 17. Mr. Chee maintains that Dr. Schultz had access to his prior treatment history, reviewed his medications and charts, and "took over" Dr. Chance's care of Mr. Chee. *Id.* Further, Mr. Chee testified that he had been seeing Dr. Schultz every two weeks. While Dr. Schultz was Mr. Chee's own doctor—as opposed to a consultative examiner—the characterization of the extent of Dr. Schultz's involvement with Mr. Chee's medical care is not borne out by the record.

Dr. Schultz saw Mr. Chee a total of four times. *See* AR 355–57, 379–80. The first time, on February 15, 2012, Dr. Schultz conducted a "Medication review with minimal psychotherapy service." AR 357. Mr. Chee had been off of his medications for about a month. *Id*. Dr. Schultz

---

[6] Dr. Chance treated Mr. Chee at NNMC between October of 2009 and December of 2010. AR 246–48, 250–51, 255–56, 260, 314, 316, 320, 322, 324–26, 333–38, 362, 366, 369–70.

8

filled his prescriptions and indicated he would perform an evaluation on his next visit. *Id*. On Mr. Chee's second visit to Dr. Schultz two days later, Dr. Schultz filled out the forms that contain his opinion regarding Mr. Chee's mental functional abilities. AR 356, 343–346. Dr. Schultz noted that Mr. Chee "has a lawyer working on his SSI and needed forms filled out by Dr. Chance but since he wasn't here I filled them out." AR 356.

Although Dr. Schultz may have had access to Mr. Chee's treatment history, there is no indication in the record that Dr. Schultz reviewed Mr. Chee's treatment records, or that he was part of a "treatment team," such that he would have a complete understanding of Mr. Chee's functional abilities on his second visit, as Mr. Chee claims. *See* Doc. 18 at 17. Further, Mr. Chee saw Dr. Schultz "every two weeks" but only twice—on March 5 and 17, 2012—*after* Dr. Schultz filled out the functional limitations forms. AR 355, 379–80. It does not appear that Dr. Schultz "took over" Mr. Chee's care so much as was simply filling in for Dr. Chance in his absence. "The treating physician's opinion is given a particular weight because of his [or her] 'unique perspective to the medical evidence that cannot be obtained from the objective medical findings alone or from reports of individual examinations, such as consultative examinations or brief hospitalizations.'" *Doyal*, 331 F.3d at 762 (quoting 20 C.F.R. § 416.927(d)(2)). I agree with the Commissioner that it is questionable whether Dr. Schultz was a "treating physician" given Dr. Schultz's brief interactions with Mr. Chee prior to expressing his opinions about Mr. Chee's mental functional abilities.

Regardless, even if Dr. Schultz could be considered Mr. Chee's treating physician, the ALJ properly discounted his opinion. Mr. Chee criticizes the ALJ for not initially and separately articulating her findings with respect to the first part of the two-step inquiry—whether Dr. Schultz's opinion was entitled to controlling weight. Doc. 18 at 16–17. Citing *Chrismon v.*

*Colvin*, 531 F. App'x 893 (10th Cir. 2013) (unpublished), Mr. Chee contends that the ALJ "collapsed the two-step inquiry into a single point, contrary to law." Doc. 18 at 16. *Chrismon*, however, is distinguishable from this case. In *Chrismon*, the ALJ not only failed to determine whether the treating physician's opinion was entitled to controlling weight, but also failed to analyze the factors set out in the regulations to facilitate meaningful judicial review. *See Chrismon*, 531 F. App'x at 901. Here, although the ALJ did not articulate whether she gave Dr. Schultz's opinion controlling weight, she provided legitimate reasons for rejecting the opinion, reasons that are supported by substantial evidence.

Where it is implicit from the discussion that the ALJ declined to give the opinion controlling weight and the ALJ's reasons for the weight given are supported by substantial evidence, the failure to conduct the first step of the two-step analysis is harmless. *See Mays v. Colvin*, 739 F.3d 569, 575 (10th Cir. 2014) ("Because we can tell from the decision that the ALJ declined to give controlling weight to [the doctor's] opinion, we will not reverse on this ground."); *Oldham v. Astrue*, 509 F.3d 1254, 1258 (10th Cir. 2007) ("The ALJ provided good reasons in his decision for the weight he gave to the treating sources' opinions. Nothing more was required in this case."); *Tarply v. Colvin*, 601 F. App'x. 641, 643–44 (10th Cir. 2015) (unpublished) (finding the ALJ's failure to explicitly state whether he gave the medical opinion controlling weight harmless where the ALJ adequately explained why the opinions were entitled to no weight); *Anderson v. Colvin*, 514 F. App'x. 756, 762 (10th Cir. 2013) (finding the ALJ provided good reasons for the weight given to the opinion based on the factors "and nothing more was required in this case" (quoting *Oldham*, 509 F.3d at 1258)); *see also Keyes-Zachary v. Astrue*, 695 F.3d 1156, 1167 (10th Cir. 2012) ("[C]ommon sense, not technical perfection is our guide.").

In this case, the ALJ implicitly declined to give Dr. Schultz's opinion controlling weight by giving it no weight. AR 398. The ALJ did not stop there. In the second part of the inquiry, the ALJ considered the "*Watkins* factors," and sufficiently explained why she rejected Dr. Schultz's opinion. The ALJ considered the length of the treatment relationship and the frequency of examination, noting that Dr. Schultz only examined Mr. Chee twice before filling out the checklist-style forms. AR 398. She considered the nature and extent of the treatment relationship and found that the "checklist-style forms appear to have been completed as an accommodation to the claimant," as Dr. Schultz only provided conclusions regarding Mr. Chee's functional limitations without any rationale or explanation. *Id.* "Such evaluation forms, standing alone, unaccompanied by thorough written reports or persuasive testimony, are not substantial evidence." *Frey v. Bowen*, 816 F.2d 508, 515 (10th Cir. 1987). Additionally, the ALJ noted that Dr. Schultz's opinion was internally inconsistent as he opined that Mr. Chee experienced hallucinations, delusions, or paranoid thinking, but his own examination revealed "no del[usions] or hall[ucinations]." *Compare* AR 343 *with* AR 379. Because the ALJ provided sufficient explanations for giving Dr. Schultz's opinions "no weight," the ALJ's failure to articulate whether Dr. Schultz's opinions were entitled to controlling weight is harmless.[7]

### C. The ALJ Gave Legitimate Reasons for Giving Dr. Koewler's Opinion Little Weight.

Dr. Koewler performed a consultative exam on Mr. Chee in May of 2010, finding that Mr. Chee had marked limitations in several areas. AR 283–87. Specifically, Dr. Koewler found that Mr. Chee was markedly limited in his ability to understand and remember detailed or

---

[7] Mr. Chee also contends that the ALJ improperly discounted Dr. Schultz's opinion by criticizing the form he used because the form included 3, rather than 5, degrees of limitation. Doc. 18 at 24; AR 398. The Commissioner concedes that this was not a proper comparison. Doc. 22 at 10. Nevertheless, the ALJ had sufficient reasons for rejecting Dr. Schultz's opinion as discussed herein.

11

complex instructions, carry out instructions, work without supervision, and interact with the public, co-workers, and supervisors. AR 286. The ALJ gave "little weight" to Dr. Koewler's opinion.

Mr. Chee contends that the ALJ did not provide legitimate reasons for rejecting Dr. Koewler's opinion. Doc. 18 at 19–21. The ALJ gave two reasons for rejecting Dr. Koewler's opinion: 1) that the opinion was contradictory "in and of itself stating the claimant is unable to work without supervision yet cannot interact with supervisors," and 2) that Mr. Chee had made improvements since Dr. Koewler's examination in 2010, making the opinion stale. AR 398. The first reason the ALJ gave for rejecting Dr. Koewler's opinion is of no consequence in light of the inconsistency of Dr. Koewler's opinion with the more recent medical records. All of Dr. Koewler's opinions became stale after Mr. Chee showed improvement with treatment for his mental health conditions.

As the ALJ pointed out, Dr. Koewler noted that Mr. Chee reported "slight improvement from [] recent psychiatric treatment." AR 286, 398. She also noted that "[s]ince then[,] the claimant has had further treatment and prescribed meds to further deal with this psychological condition." AR 398. For example, in March 2012, Dr. Schultz noted that after restarting medications,[8] Mr. Chee was "doing better overall," his mood had improved, and he was no longer having lapses of consciousness. AR 379. Mr. Chee's affect was bright, and he had rational and goal-directed thinking, but continued to have an impairment of attention and concentration. *Id.* Medical records from 2014 and 2015 showed that Mr. Chee was working out and "feels more energized." AR 608, 616. Further, during the more recent exams, Mr. Chee was alert and oriented, his cognitive exam was "grossly normal," he was cooperative, had good eye

---

[8] When Mr. Chee first began seeing Dr. Schultz in February 2012, he had been off his medications for about a month. AR 357.

contact, clear speech, and his thought process was logical and goal directed. AR 609, 614, 616–17, 640. The ALJ noted that "[i]n regard to the medications, the claimant tolerates them well and his mood is improved when taking his medications." AR 396–97. Further, "there is nothing in the record indicating the claimant's condition has worsened since his accident[,] nor has he sought more extensive psychotherapy services." AR 397. In short, when Mr. Chee was taking his medications, he functioned reasonably well.[9] *See* AR 396–99; *see also* AR 625, 631, 640 (listing medications taken during 2015).

The ALJ evaluated the factors with regard to Dr. Koewler's consultative exam and found that Dr. Koewler's opinion was inconsistent with record as a whole. The later improvement in Mr. Chee's condition—that would not have been observed by Dr. Koewler several years before—compelled the ALJ to afford Dr. Koewler's opinion little weight. *See Kruse v. Astrue*, 436 F. App'x, 879, 883 (10th Cir. 2011) (unpublished) (finding that it was "readily apparent from ALJ's rationale—the later improvement in [the claimant's] condition—that he afforded the opinion little weight"); *see also Endriss v. Astrue*, 506 F. App'x, 772 775–76 (10th Cir. 2012) (unpublished) (affirming the ALJ's decision that a portion of the treating physician's opinion was entitled to little weight because the ALJ adequately explained how the objective medical evidence was inconsistent with medical evidence showing improvement in the claimant's condition after surgery). The ALJ provided a legitimate reason for the weight she gave to Dr. Koewler's opinion, and nothing more is required in this case. *Oldham*, 509 F.3d at 1258.

---

[9] Mr. Chee suffered a lapse in treatment in April and May of 2015 when he was arrested and incarcerated for a month, which prompted a visit to the emergency room. AR 677–83. He was not taking all his prescribed medications during this time. AR 399, 677, 680.

### D. The ALJ Gave Legitimate Reasons for Giving Dr. Robinowitz's Opinion Partial Weight.

Dr. Robinowitz performed a medical records review and provided his opinion with regard to Mr. Chee's mental functional capacity. AR 288–305. Mr. Chee argues that the ALJ failed to incorporate portions of the medical opinion in the RFC without explanation. Doc. 18 at 21–23; Doc. 23 at 6–8. I disagree.

Dr. Robinowitz filled out a Mental Residual Functional Capacity Assessment form on May 20, 2010. AR 302–04. The form is divided into three sections: I. Summary Conclusions; II. Remarks; and III. Functional Capacity Assessment. *Id*. Although Dr. Robinowitz found that Mr. Chee was moderately limited in most areas of Section I, and markedly limited in three areas, he concluded that Mr. Chee "can perform simple routine work-related tasks in a normal workday/workweek without interference from psychological symptoms." AR 302–04. Mr. Chee argues that the ALJ failed to incorporate all the opinions found in Section I of Dr. Robinowitz's assessment into Mr. Chee's RFC. Doc. 18 at 21–23; Doc. 23 at 6–8. Mr. Chee further argues that limiting him to "unskilled work" does not account for his moderate limitations, and that the ALJ failed to explain why she did not adopt those limitations. Doc. 18 at 22–23.

I recognize, as Mr. Chee points out, that "[t]he ALJ may not pick and choose which aspects of an *uncontradicted* medical opinion to believe, relying on only those parts favorable to a finding of nondisability." *Hamlin v. Barnhart*, 365 F.3d 1208, 1219 (10th Cir. 2004) (emphasis added). This is not a case where the ALJ picked and chose, however. In reaching her RFC determination, the ALJ relied on all of the record evidence. The ALJ determined that— much like Dr. Koewler's opinion—portions of Dr. Robinowitz's opinion were inconsistent with the record as a whole because Dr. Robinowitz did not have the benefit of more recent medical records that showed Mr. Chee's improvement while on medication. AR 398. Dr. Robinowitz's

opinion, therefore, was not "uncontradicted." *Cf. Hamlin*, 365 F.3d at 1219 (ALJ failed to explain how the treating physician's opinion were inconsistent with other medical evidence in the record).

"In reaching [an] RFC determination, an ALJ is permitted, and indeed required, to rely on *all* of the record evidence, including but not limited to medical opinions in the file." *Wells v. Colvin*, 727 F.3d 1061, 1071 (10th Cir. 2013) (emphasis in original). The ALJ explained that she gave only partial weight to Dr. Robinowitz's assessments because his "review of the record occurred in 2010 and newer information has been obtained . . . ." AR 398. Accordingly, this is not a "pick and choose" case. Rather, the ALJ simply did not incorporate portions of Dr. Robinowitz's opinion that she believed were inconsistent with the newer medical evidence that established that Mr. Chee was improving with treatment. "Inconsistency with the record as a whole, the basis on which the ALJ relied here, is in general a legitimate basis on which to discount or reject a medical opinion." *Wells*, 727 F.3d at 1072. Because inconsistency is a legitimate basis for the ALJ to discount Dr. Robinowitz's opinion, the ALJ did not err in giving his opinion only partial weight. To the extent that the ALJ did not incorporate Dr. Robinowitz's entire opinion into the RFC, the ALJ gave sufficient reasons for doing so.

## VI.     Conclusion

The ALJ applied the correct legal principals in her assessment of the doctors' medical source opinions. She provided legitimate reasons for discounting the opinions based on the entire record, and her reasons are supported by substantial evidence. Accordingly, I affirm the decision of the Commissioner.

IT IS THEREFORE ORDERED that plaintiff Wilson Chee's Motion to Reverse and Remand for a Rehearing with Supporting Memorandum, filed November 18, 2016 (Doc. 18), is DENIED, and the decision of the Commissioner is AFFIRMED.

IT IS FURTHER ORDERED that this case is DISMISSED.

_____
Laura Fashing
United States Magistrate Judge
Presiding by Consent